# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 4:94-cr-00044-MR-10

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| FREDERICK MAURICE DURHAM, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's Motions for Reduction of Sentence under The First Step Act of 2018 [Docs. 705, 708], as supplemented by his retained counsel [Doc. 721].[1]

---

[1] The Defendant initially filed a *pro se* letter seeking a reduction of sentence in July 2019. [Doc. 705]. The Court subsequently entered an Order giving the Federal Public Defenders for the Western District of North Carolina ("Federal Defenders") thirty (30) days to review the Defendant's letter and to file a supplemental or amended motion. [Doc. 707]. On January 15, 2020, the Defendant filed a formal motion *pro se* seeking a reduction of sentence. [Doc. 708]. In February 2020, Joshua Carpenter of the Federal Defenders filed a notice of appearance on behalf of the Defendant. [Doc. 709]. Mr. Carpenter then sought an extension of time in which to file a supplemental motion [Doc. 710], which the Court granted [Text-Only Order entered Feb. 13, 2020]. Mr. Carpenter then sought to stay this matter pending the Fourth Circuit's decision in United States v. Chambers, No. 19-7104 [Doc. 711], which the Court allowed [Text-Only Order entered Mar. 16, 2020]. Once Chambers was decided, Mr. Carpenter sought additional time to file supplemental briefing [Doc. 714], which the Court granted. In December 2020, Mr. Carpenter sought to suspend further briefing in this matter pending the receipt of transcripts from the Clerk's Office. [Doc. 716]. The Court granted this motion. [Doc. 717]. Finally, on May 14, 2021, attorney Noell Tin filed a notice of appearance as retained counsel for the Defendant. [Doc. 720]. That same day, Mr. Tin filed the present supplemental motion for a reduction of sentence under the First Step Act. [Doc. 721].

**I.   BACKGROUND**

In 1993, the Defendant Frederick Maurice Durham participated in a drug-trafficking conspiracy that involved the distribution of more than 892 grams of crack cocaine and at least an ounce of powder cocaine. [Doc. 137: PSR at ¶¶ 1-16]. During the course of the drug-trafficking conspiracy, the Defendant possessed at least two firearms and fired at least one of those firearms. See United States v. Durham, No. 96-4467, 1999 WL 279794, at *1 (4th Cir. May 6, 1999) (per curiam).

In May 1994, a federal grand jury indicted the Defendant and 19 others and charged them with conspiracy to possess with intent to distribute crack and powder cocaine. [Doc. 3: Indictment]. The Defendant was also charged with two counts of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). [Id.].

The Defendant's case was initially set for docket call on May 8, 1995. However, the Defendant absconded from the proceedings, resulting in the issuance of a bench warrant. [See Minute Entry entered May 8, 1995; see also Doc. 137: PSR at ¶ 18]. The Defendant was eventually apprehended in Douglas County, Georgia, when he was arrested along with four others on June 18, 1995 and charged with the June 17, 1995 killing of Darnelle Smith in Lithia Springs, Georgia, during a robbery of drugs and money. Smith was

shot in the chest with a handgun, and two individuals at the location were forced to move about the residence by threat of bodily harm. Evidence revealed the theft of a safe and its contents. At the time of his arrest, the Defendant was found in possession of properly stolen from the Smith residence, including a Gucci watch and ring. The Defendant was charged in state court in Georgia with felony murder, malice murder, burglary, and kidnapping. [See Doc. 137: PSR at ¶¶ 18, 57].

In October 1995, the Defendant's case proceeded to trial in this Court, and the jury found him guilty of all three federal offenses. [Doc. 57: Jury Verdict]. The Defendant faced a statutory mandatory minimum of ten years and a maximum of life in prison for his drug-trafficking offense and a statutory maximum of ten years in prison for each of his firearm offenses. In anticipation of sentencing, the probation office prepared a Presentence Report (PSR). In the PSR, the probation officer calculated a base offense level of 36 based on the Defendant's responsibility for 892 grams of crack cocaine and one ounce of powder cocaine. [Doc. 137: PSR at ¶ 21]. After adjustments for the use of a firearm during the offense and for obstruction of justice (i.e., absconding from the courthouse), the probation officer calculated a total offense level of 40. [Id. at ¶¶ 22, 25, 43]. The probation officer then calculated a total of six criminal history points (criminal history

category III) based on the Defendant's prior convictions for unlawful possession of a weapon, misdemeanor possession of stolen goods, carrying a concealed weapon, resisting arrest, assault on a female, and failure to appear. [Id. at ¶¶ 46-53].

Based on a total offense level of 40 and a criminal history of III, the probation officer calculated a Guidelines range of 360 to life.[2] [Id. at ¶ 83]. The Defendant was also subject to a term of at least five years of supervised release. [Id. at ¶ 86].

A sentencing hearing was held on June 3, 1996. After hearing from the parties and considering the Defendant's offense conduct, this Court[3] sentenced the Defendant to 420 months' imprisonment for the drug-trafficking offense and to concurrent terms of ten years' imprisonment for each of the felon-in-possession offenses. [Doc. 150: Judgment at 2]. The Court also sentenced the Defendant to five years of supervised release for the drug-trafficking offense. [Id. at 3]. The Fourth Circuit Court of Appeals affirmed the Defendant's convictions and sentence. [Docs. 223, 224].

---

[2] At the time of the Defendant's sentencing, the Guidelines were considered to be mandatory.

[3] The Honorable Lacy H. Thornburg, presiding. Upon Judge Thornburg's retirement, this matter was reassigned to the undersigned.

4

Following his conviction in federal court, the Defendant was returned to the State of Georgia to stand trial for his pending state charges. The Defendant was found guilty of these offenses and sentenced to life for murder and twenty years for the kidnapping and burglary offenses. [See Doc. 721-1: Georgia Offender Information]. After serving nearly 22 years in state custody, the Defendant was transferred to the Federal Bureau of Prisons (BOP) and began serving his federal sentence in August 2018. [Id.; see also Doc. 721-2: BOP Inmate Data]. The Defendant's projected release date is September 17, 2046.[4]

The Defendant now seeks a reduction of his sentence pursuant to the First Step Act. [Docs. 705, 708, 721]. The Government agrees that the Defendant is eligible for a reduction in his custodial sentence and consents to a reduction in the Defendant's drug-trafficking sentence to 235 months' imprisonment and a reduction of his term of supervised release to a term of four years. The Government objects, however, to any further reduction in the Defendant's sentence. [Doc. 723].

---

[4] See https://www.bop.gov./inmateloc/ (last visited July 6, 2021).

## II. DISCUSSION

On August 3, 2010, the Fair Sentencing Act of 2010, Pub. L. 111-220, went into effect. Section 2 of the Act increased the quantity of cocaine base required to trigger the enhanced penalties of Section 841. Specifically, it raised the (b)(1)(A) threshold from "50 grams" to "280 grams" and the (b)(1)(B) threshold from "5 grams" to "28 grams." Section 3 eliminated the mandatory minimum for simple possession of cocaine base under 21 U.S.C. § 844(a). Congress did not apply these changes retroactively to defendants sentenced before the Act's passage. Accordingly, the Defendant could not obtain relief under the Fair Sentencing Act.

On December 21, 2018, the President signed into law the First Step Act of 2018, Pub. L. 115-391. Section 404 of the Act gives retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010. Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Section 404(b) then provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010

6

(Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed."

The Defendant is eligible for relief under the First Step Act because he was convicted of a "covered offense" under Section 404(a)'s definition. See United States v. Gravatt, 953 F.3d 258, 263-64 (4th Cir. 2020). His offense was committed before August 3, 2010; he was subjected to the enhanced statutory penalties under § 841(b)(1)(A); and those statutory penalties were "modified by Section 2 . . . of the Fair Sentencing Act." Further, the Defendant's sentence has not been previously reduced by the operation of Sections 2 or 3 of the Fair Sentencing Act of 2010, and no previous motion has been made by the Defendant pursuant to Section 404 of the First Step Act of 2018.

Having determined that the Defendant is eligible for relief under the First Step Act, the Court must next determine whether in its discretion any such relief should be afforded and, if so, to what extent. See United States v. Wirsing, 943 F.3d 175, 180 (4th Cir. 2020); First Step Act § 404(b), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

The Court begins its analysis with the calculation of the appropriate Guidelines range. Here, had the Fair Sentencing Act and the retroactive

7

guideline amendments to U.S.S.G. § 2D1.1 been in effect at the time the Defendant was sentenced, he would have been subjected to an advisory Guidelines range of 235 to 293 months. [See Doc. 722 at 2]. This Court originally sentenced the Defendant to a term 33% above the low-end of the range advised by the Sentencing Guidelines. Applying the same proportionate reduction would yield a sentence of 254 months for the Defendant's drug-trafficking offense.

Having determined the appropriate Guidelines range, the Court now turns to the relevant § 3553(a) factors in order to determine whether a further reduction is warranted. The Defendant contends that the § 3553(a) factors—including, but not limited to post-sentencing rehabilitation—support the imposition of a reduced sentence of 60 months.[5] The Government, on the other hand, argues that a sentence at the low-end of the now-applicable Guidelines range would be appropriate.

At the outset, the Court notes that the nature and circumstances of the Defendant's offense conduct militate against the imposition of a sentence

---

[5] The Defendant contends that the Court should resentence him to concurrent terms of 60 months for each count of conviction under the sentencing packaging doctrine. [See Doc. 721 at 6]. Because the Court concludes that the Defendant should not receive a sentence below the now-applicable Guidelines range for the drug-trafficking offense, the Court need not address the Defendant's argument regarding his other counts of conviction.

8

below the now-applicable Guidelines range. The Defendant's offense conduct involved the distribution of a large quantity of crack cocaine and powder cocaine and the possession and firing of firearms. Additionally, the Defendant has a significant criminal history. Prior to his federal sentencing, the Defendant had been convicted of a number of felony offenses, resulting in a Criminal History Category of III. Following his sentencing for the present offenses, he was convicted in Georgia state court of murder, kidnapping, and burglary charges, resulting in him serving over two decades in prison prior to commencing the service of his federal sentence.

In seeking a reduced sentence of 60 months, the first factor the Defendant cites is the now-applicable Guidelines range. See 18 U.S.C. § 3553(a)(4). Specifically, the Defendant argues that this Guidelines range is "vastly lower" than the Guidelines range of 360 months to life which applied at the time of the Defendant's sentencing. [Doc. 721 at 13]. The fact that the applicable Guidelines range has been lowered significantly, however, provides no justification for imposing such an extremely reduced sentence. This argument, therefore, is rejected.

The second factor that the Defendant cites is the fact that he has served over twenty years for charges that were pending at the time he sentenced for the present federal case, which greatly delayed the

9

commencement of his federal sentence. [Doc. 721 at 13]. Had he begun his federal sentence on the date he was sentenced for those offenses, the Defendant argues, he would already have served over 350 months, far in excess of the now-applicable Guidelines range. [Id. at 13]. The Defendant's argument in this regard, however, ignores the fact that the Defendant was serving this lengthy state sentence for a number of violent offenses, including kidnapping and murder, which were entirely unrelated to the charges he was facing in this Court and which he committed after he violated the conditions of his bond and absconded from this District. In light of these circumstances, the fact that his federal sentence was delayed due to these intervening convictions does not persuade the Court to reduce his sentence below the now-applicable Guidelines range.

The third and final factor that the Defendant cites is the evidence of his post-sentencing rehabilitation. [Doc. 721 at 13-14]. On this point, the Court finds that the Defendant's efforts at rehabilitation are significant. While in state custody, the Defendant maintained a good behavior record and participated in 21 programs, including numerous substance abuse and relapse prevention programs. [Doc. 721-4: Georgia DOC Offender Programs]. While in BOP custody, he has received no disciplinary actions and participated in a number of substantive educational programs and work

assignments. [See Doc. 722: Supp. PSR at 3]. The Defendant's Summary Reentry Plan Progress Report further confirms that the Defendant "has maintained clear conduct" and "interacts appropriately with staff and other inmates." [Doc. 721-3: BOP Summary Reentry Plan Progress Report].

Considering the Defendant's significant efforts of rehabilitation, the Court concludes that a sentence of 235 months' imprisonment—which is the low-end of the now-applicable Guidelines range—is appropriate. This is in contrast to the Defendant's original sentence, which was 60 months above the low end of the then applicable guidelines range, and constitutes an 85 month reduction in his original sentence.

For all these reasons, in the exercise of its discretion, the Court grants the Defendant's request for relief under the First Step Act and reduces his term of imprisonment to a term of 235 months and the term of supervised release to a term of four years. The Defendant's request for the imposition of a reduction of sentence to a term of sixty (60) months is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motions for Reduction of Sentence under The First Step Act of 2018 [Docs. 705, 708], as supplemented [Doc. 721], are **GRANTED IN PART** and **DENIED IN PART**; the Defendant's sentence is hereby reduced to **235 months' imprisonment**; and the term of supervised release is hereby reduced to a

11

Case 4:94-cr-00044-MR   Document 725   Filed 08/27/21   Page 11 of 12

term of **four (4) years**. All other terms and conditions of the Defendant's Judgment [Doc. 150] shall remain in full force and effect.

The Clerk is respectfully directed to prepare an Amended Judgment in accordance with this Order.

The Clerk is further directed to provide copies of this Order to the Defendant, counsel for the Defendant, the United States Attorney, the United States Marshals Service, the United States Probation Office, and the United States Bureau of Prisons.

**IT IS SO ORDERED.**

Signed: August 27, 2021

Martin Reidinger
Chief United States District Judge