THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 4:94-cr-00044-MR-10

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **O R D E R** |
| FREDERICK MAURICE DURHAM, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion for Reduced Sentence under 18 U.S.C. § 3582(c)(1)(A)(i)" [Doc. 735] and the Defendant's Motion to Appoint Counsel [Doc. 736].

**I.   BACKGROUND**

In 1993, the Defendant Frederick Maurice Durham participated in a drug-trafficking conspiracy that involved the distribution of more than 892 grams of crack cocaine and at least an ounce of powder cocaine. [Doc. 722: Supp PSR at 1]. During the drug-trafficking conspiracy, the Defendant possessed no less than two firearms and fired at least one of them. See United States v. Durham, No. 96-4467, 1999 WL 279794, at *1 (4th Cir. May 6, 1999).

In May 1994, a federal grand jury indicted the Defendant and 19 others, charging them with conspiracy to possess with intent to distribute crack and powder cocaine. [Doc. 3]. The Defendant was also charged with two counts of possessing a firearm as a convicted felon. [Id.].

The Defendant's case was initially set for trial in May 1995, but he absconded from the District before docket call. [Doc. 137: PSR at 7]. The Defendant was eventually apprehended in Douglas County, Georgia, when he was arrested with four others for the June 17, 1995, murder of Darnell Smith. The Defendant was charged in Georgia state court with felony murder, malice murder, burglary, and kidnapping. [Id. at 7, 14].

After being returned to this District, the Defendant's case proceeded to jury trial in October 1995. He was convicted on all counts. [Doc. 57: Verdict]. The Court sentenced the Defendant to 420 months' imprisonment for the drug-trafficking offense, and concurrent terms of ten years in prison for each of the felon-in-possession offenses. [Doc. 150: Judgment at 1-2].

Following his federal sentencing, the Defendant was returned to Georgia to stand trial for his pending state murder charges. The Defendant was found guilty of felony murder, armed robbery, burglary, and kidnapping. He was sentenced to life imprisonment for murder, and twenty years for the

2

kidnapping and burglary offenses. Durham v. State, 279 Ga. 166, 166 n.1 (2005). After serving 21 years (and apparently completing his state sentence), he was transferred to the Federal Bureau of Prisons to begin serving his federal sentence in August 2018. [See Docs. 721-1, 721-2]. At the time, the Defendant's projected release date was September 17, 2046. [Doc. 721-2 at 1].

In 2021, the Defendant sought a reduction in his drug-trafficking sentence pursuant to the First Step Act. [Docs. 705, 708, 721]. The Government agreed that he was eligible for relief under the First Step Act and recommended a sentence at the low-end of the applicable Guidelines range. [Doc. 723]. The Court reduced the Defendant's drug-trafficking sentence to a term of 235 months' imprisonment. [Doc. 725]. The Defendant is currently serving his sentence at FCI Williamsburg in Salters, South Carolina, with a projected release date of July 31, 2032.[1]

On November 9, 2022, the Defendant filed the present motion for compassionate release, arguing that various factors render him more vulnerable to the dangers of COVID-19. [Doc. 735]. By way of a separate motion, the Defendant also seeks the appointment of counsel to assist him

---

[1]See https://www.bop.gov/inmateloc/ (last accessed May 24, 2023).

in litigating this motion. [Doc. 736]. The Court directed the Government to respond to the Defendant's motion. [Text-Only Order entered Nov. 18, 2022]. The Government filed its response on December 16, 2022. [Doc. 738]. After receiving an extension of time to do so [see Doc. 741], the Defendant filed a reply. [Doc. 743].

## II. DISCUSSION

### A. Motion for Compassionate Release

As a general matter, the Court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The only exceptions to this general rule are the exceptions specifically delineated by Congress. Id. One such exception is the compassionate release exception, which gives the Court discretionary authority to reduce a sentence upon a finding that "extraordinary and compelling reasons warrant" the reduction. Id. § 3582(c)(1)(A)(i).

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's

behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Here, the Government argues that the Defendant's motion should be denied because there is no evidence that he submitted a request for relief to the warden of his facility prior to filing his motion. [Doc. 738 at 3]. In response to this argument, the Defendant submits a copy of an electronic message he sent to the warden on September 14, 2022, setting forth various grounds for compassionate release. [Doc. 743-1]. Although the Defendant does not provide any evidence that the warden responded to this request, it is clear that more than 30 days have passed since this message was sent. Accordingly, the Court will consider the statutory requirements of exhaustion to be satisfied and will proceed to address the merits of the Defendant's motion.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must

5

also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not yet updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, the Court of Appeals has recognized that the policy statement "remains helpful guidance even when motions are filed by defendants."

6

United States v. Hargrove, 30 F.4th 189, 194-95 (4th Cir. 2022) (quoting McCoy, 981 F.3d at 282 n.7). The Defendant bears the burden of establishing that he is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Here, the Defendant contends that his race, daily undiagnosed headache, arthritis in both knees, loss of sight in both eyes, and constant stomach cramps, render him more vulnerable to the COVID-19 virus. However, none of these conditions are identified by the CDC as a risk factor for complicating COVID-19.[2] While the Defendant's BOP medical records confirm that he is diabetic and obese, such records also indicate that he recently reported purposeful weight loss. [Doc. 744 at 17, 62].

While the Defendant claims to have kidney disease, this condition is not indicated in his medical records. Moreover, while the CDC has identified diabetes, obesity, and a history of tobacco use as risk factors for COVID-19 complications,[3] the medical records indicate that the Defendant is receiving

---

[2] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#immunocompromised (last accessed May 24, 2023).

[3] Id.

appropriate care and medication and that these conditions are well-controlled in the prison setting. [Id. at 9].

The Defendant's medical records indicate that he tested positive for COVID-19 in December 2020 and quickly recovered without long-term complications. [Id. at 64]. Although the COVID-19 vaccine has been made available to the Defendant, he has refused to be vaccinated. [Doc. 744 at 17, 72]. According to the CDC, vaccine effectiveness studies indicate that the mRNA COVID-19 vaccines can significantly reduce the risk of contracting COVID-19 and can offer significant protection against severe illness, hospitalization, and death.[4] A defendant who declines an available vaccine without a compelling reason should not be granted compassionate release premised upon a fear of contracting the coronavirus. See United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("[I]f an inmate does not present a compelling reason justifying the failure to be vaccinated despite access to the vaccine, a district court would abuse its discretion by granting a motion seeking a sentence reduction under § 3582(c)(1)(A)(i) on the grounds that COVID-19 constitutes an extraordinary and compelling

---

[4] See https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last accessed May 24, 2023).

8

justification."); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an "extraordinary and compelling" justification for release. The risk is self-incurred.").

In short, the fact that the Defendant faces a potential risk of contracting the virus again while incarcerated, without more, is not sufficient to justify the relief he requests. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Although the Defendant has three CDC-identified COVID-19 risk factors, he is receiving appropriate medical care in prison and has access to a vaccine upon request. Moreover, the Defendant has failed to demonstrate that his risks associated with the virus are substantially greater in custody than they would be if he were released. Accordingly, the Court concludes that the Defendant has failed to establish that his susceptibility to COVID-19 constitutes an extraordinary and compelling reason for a reduced sentence.

9

The Defendant also argues that various "intervening change[s] in the law" warrant granting him a reduced sentence. First, citing Rehaif v. United States, 139 S. Ct. 291 (2019), the Defendant argues that his § 922(g) convictions should be vacated because the Government did not allege and prove at trial that he knew he was prohibited from possessing a firearm. [Doc. 735 at 5]. The Defendant, however, is foreclosed from making this type of argument in a compassionate release motion. United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022) ("Because [28 U.S.C.] § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements.").

Second, the Defendant argues that his § 922(g) sentences should be reduced pursuant to the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194. [See Doc. 735 at 5]. Section 404(a) of the Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 . . ., that was committed before August 3, 2010." Sections 2 and 3 of the Fair Sentencing Act of 2010 increased the quantity of cocaine base required to

10

Case 4:94-cr-00044-MR   Document 745   Filed 05/25/23   Page 10 of 14

trigger the enhanced penalties of 21 U.S.C. § 841 and eliminated the mandatory minimum for simple possession of cocaine base under 21 U.S.C. § 844(a). Here, the Defendant's firearm offenses are not "covered offenses" under the Act. Accordingly, the First Step Act provides him no basis for relief with respect to his § 922(g) convictions.

For all these reasons, the Court concludes none of the grounds cited by the Defendant, considered either singly or in combination, constitute extraordinary and compelling reasons for his early release.

Even if the Defendant could establish an extraordinary and compelling reason, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the Defendant is 54 years old and has an extensive and violent criminal history. In 1991, the Defendant possessed an "Uzi semi-automatic rifle" and then absconded from probation. [Doc. 137: PSR at 10]. Two years later, he assaulted a female. [Id. at 12]. He dealt in large amounts of crack and powder cocaine. [Id. at 5-6]. He carried weapons to assist him in the endeavor, firing at least one of them. [Id.]. Finally, while awaiting trial for the

present offenses, he absconded again and committed a robbery, a kidnapping, and murder. [Id. at 14]. The Defendant had no meaningful, consistent work history prior to his incarceration, and the few years during which he was not in custody as an adult were spent committing violent crimes and using drugs. [Id. at 17-18]. The Defendant offers no justification for considering the § 3553(a) factors any differently than Judge Thornburg did at his original sentencing, or from his resentencing by this Court. [See Doc. 725 at 8-11]. Moreover, the Defendant has served only a fraction of his current federal sentence, having first served a 21-year sentence for his 1995 robbery, kidnapping, and murder convictions.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's motion for compassionate release is denied.

### B. Motion for Appointment of Counsel

The Defendant also moves for the appointment of counsel to represent him in connection with litigating his request for compassionate release. The Defendant has no constitutional right to the appointment of counsel to file post-conviction motions. Lawrence v. Florida, 549 U.S. 327, 336-37 (2007)

(citing Coleman v. Thompson, 501 U.S. 722, 756-57 (1991)); Rouse v. Lee, 339 F.3d 238, 250 (4th Cir. 2003), cert. denied, 541 U.S. 905 (2004) (citing Pennsylvania v. Finley, 481 U.S. 551, 555-56 (1987) (no constitutional right to counsel beyond first appeal of right)). The Court may, in some circumstances, appoint counsel to represent a prisoner when the interests of justice so require and the prisoner is financially unable to obtain representation. See 18 U.S.C. § 3006A(a)(2)(B). In the instant case, the Defendant has already filed a motion for compassionate release outlining the grounds for his motion. Accordingly, the Court concludes that the interests of justice do not require the appointment of counsel in this case. See United States v. Riley, 21 F. App'x 139, 141-42 (4th Cir. 2001).

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Reduced Sentence under 18 U.S.C. § 3582(c)(1)(A)(i)" [Doc. 735] is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Appoint Counsel [Doc. 736] is **DENIED**.

**IT IS SO ORDERED.**

Signed: May 25, 2023

Martin Reidinger
Chief United States District Judge